Exhibit A

MICHAEL E. ADAMS (SBN: 47278)
LAW OFFICES OF MICHAEL E. ADAMS
702 Marshall Street, Suite 300
Redwood City, CA 94063
Telephone: (650) 599-9463
Fax:        (650) 599-9785

Attorney for Plaintiff
SOREN ANDERSEN

FILED

2005 JUL 15  PM 12: 51

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____DEPUTY
Shanon McCullen

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

|  |  |
|---|---|
| SOREN ANDERSEN,<br><br>            Plaintiff,<br><br>    vs.<br><br>MAIA YOUNG, an individual;<br>STANFORD UNIVERSITY, a business<br>entity form unknown; and DOES 1-100,<br>inclusive,<br><br>            Defendants | Case No.  1-05-CV-042734<br><br>**FIRST AMENDED COMPLAINT<br>FOR DEFAMATION** |

Plaintiff alleges:

### GENERAL FACT ALLEGATIONS

1.  Plaintiff SOREN ANDERSEN (hereinafter "Plaintiff" at all relevant times was a resident of the County of Santa Clara, California.

2.  Defendant MAIA YOUNG (hereinafter "YOUNG"), at all relevant times, was a resident of the City of Menlo Park, County of San Mateo, California.

3.  Defendant STANFORD UNIVERSITY (hereinafter "STANFORD"), at all relevant times, is and was a private university located in the County of Santa Clara, California.

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

1

First Amended Complaint for Defamation

1        4. Plaintiff is ignorant of the true names, capacities, and facts indicating the

2    liability of, the defendants sued herein as Does 1 to 100, inclusive, and therefore sues

3    them under fictitious names. If and as Plaintiff ascertains such names, capacities, and

4    facts, Plaintiff will amend this complaint to so show.

5        5. Each Defendant was an agent and employee of every other Defendant, and, in

6    acting as herein alleged, acted within the course and scope of said agency and

7    employment.

8        6. Plaintiff is an accomplished scientist who has published in many of the most

9    prestigious scientific journals in his field. On or about September, 2002, Plaintiff

10   commenced post-graduate work at STANFORD. Plaintiff also joined STANFORD's

11   Aerobics and Yoga Club ("Club") in the Fall of 2002, as well as outside yoga programs

12   unaffiliated with STANFORD. Plaintiff never experienced any problems with any yoga

13   program or instructor.

14       7. In the Fall of 2003, the Club experienced internal changes as a result of an

15   instructor moving away. YOUNG thereafter replaced said instructor and commenced

16   yoga instruction at the Club.

17       8. YOUNG initiated e-mail correspondence to a number of the Club's yoga

18   students. Plaintiff was one of the students with whom YOUNG began communicating,

19   and responded to the communications. Over the course of time, YOUNG's emails and

20   other communications became flirtatious toward Plaintiff.

21       9. YOUNG invited Plaintiff to her home.

22       10. YOUNG invited Plaintiff to social events with her friends.

23       11. In November, 2003, YOUNG planned at least one Sunday brunch with

24   Plaintiff as demonstrated by numerous e-mails between Plaintiff and YOUNG.

25       12. However, on November 13, 2003, prior to the planned Sunday brunch,

26   YOUNG sent a strange, unintelligible e-mail to Plaintiff stating she would not appear at

27   the Sunday brunch and requesting that she and Plaintiff refrain from any relationship

28   beyond instructor/student. As a result, Plaintiff did not contact YOUNG.

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

2

First Amended Complaint for Defamation

1    13. In December 2003, YOUNG approached Plaintiff socially. Thereafter,

2  Plaintiff sent a highly acclaimed and well-received book entitled *The Good Women of*

3  *China: Hidden Voices* by Xinran to YOUNG in January, 2004. In March, 2004, Plaintiff

4  sent at least one letter with a self-addressed stamped envelope enclosed to YOUNG

5  requesting the return of the above-referenced book. YOUNG did not return the book.

6  Finally, Plaintiff contacted YOUNG who then returned the book. Five days thereafter,

7  Plaintiff sent YOUNG an e-mail acknowledging he had received the book.

8    14. Plaintiff sent an e-mail on March 26, 2004 to YOUNG speaking of yoga. On

9  April 2, 2004, plaintiff contacted YOUNG. YOUNG requested that Plaintiff cease

10  contacting her, and he did. Plaintiff had resumed yoga classes with YOUNG and another

11  instructor, and he refrained from any contact or communication with YOUNG outside of

12  attending her Yoga classes. During her Yoga classes, Plaintiff also refrained from

13  communication with YOUNG, whereas YOUNG was sometimes flirtatious with Plaintiff.

14  Plaintiff ignored such flirtations.

15    15. In May 2004, YOUNG reported to the police that some personal property of

16  hers had been vandalized, and speculated to the police that Plaintiff had committed the

17  vandalism. The police then contacted Plaintiff, who fully and truthfully explained that he

18  had absolutely nothing to do with the alleged vandalism. Satisfied with Plaintiff's

19  explanation, the police neither arrested nor sought prosecution of Plaintiff.

20    16. In or about May or June, 2004, YOUNG informed various colleagues and

21  administrators employed by STANFORD of her contention that Plaintiff had both

22  vandalized her personal property. Plaintiff met with the STANFORD personnel in the

23  attempt to convince them that he in fact had nothing to do with the alleged vandalism, and

24  he produced documentation corroborating his innocence and directly refuting the

25  speculative and nebulous allegations by YOUNG.

26    17. The STANFORD personnel nonetheless unreasonably disregarded all

27  information provided by Plaintiff, and credited YOUNG's unfounded allegations by

28  taking punitive action against Plaintiff, namely barring him from being in the same

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

3

First Amended Complaint for Defamation

1   vicinity as YOUNG while on the STANFORD campus, thereby excluding him from

2   access to an entire geographical region of the campus, and barring him from attending

3   yoga classes at the Club or otherwise having any contact with anyone associated with the

4   Club.  In addition, the STANFORD administrators repeated YOUNG's allegations to

5   STANFORD campus police and other personnel, and characterized Plaintiff as a predator

6   who must be reported to the campus police if he violated the above ban.

7

8                              **FIRST CAUSE OF ACTION**

9                                   **(Defamation)**

10          18.  Plaintiff herein realleges Paragraphs 1 through 17, hereinabove, and each and

11  every allegation thereof, as though fully set forth herein.

12          19.  In publishing her allegation against Plaintiff to STANFORD personnel,

13  YOUNG knew the allegation to be false, or acted with reckless disregard for the truth or

14  falsity thereof.

15          20.  YOUNG's allegation that Plaintiff had vandalized her property was and is

16  emphatically false.

17          21.  STANFORD personnel republished YOUNG's allegation that Plaintiff had

18  vandalized her property, and furthermore published additional allegations that Plaintiff

19  was a predator who had harassed YOUNG and others.   In doing so, the STANFORD

20  personnel, including Assistant Dean Hsu and Associate Dean Griffiths, knew or should

21  ahve known the statements to be false, or acted with reckless disregard for the truth or

22  falsity thereof.

23          22.  The further allegations that Plaintiff was a predator who had not only harassed

24  YOUNG's property, but also harassed YOUNG and others, was and is emphatically false.

25          23.  As a proximate result of Defendants' conduct, Plaintiff has been damaged in

26  his professional and personal reputation, and has furthermore suffered incalculable

27  economic loss as well as emotional distress.

28          24.  The aforementioned conduct of Defendants was intentional and done for the

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

4

First Amended Complaint for Defamation

1  purpose of depriving Plaintiff of his reputation, dignity, property, legal rights, and was

2  despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious

3  disregard of his rights, so as to justify an award of exemplary and punitive damages.

4

### SECOND CAUSE OF ACTION

### (Defamation Per Se)

7  25.  Plaintiff incorporates by reference Paragraphs 1 through 24 of the Complaint,

8  and each and every allegation thereof, as though fully set forth herein.

9  26.  The above allegations against Plaintiff were construable and in fact construed

10  bcy third parties hearing the allegations as constituting crimes allegedly committed by

11  Plaintiff, namely vandalism, harassment and stalking.

12  27.  As a proximate result of Defendants' conduct, Plaintiff has been damaged in

13  his professional and personal reputation, and has furthermore suffered incalculable

14  economic loss and emotional distress.

15  28.  The aforementioned conduct of Defendants was intentional and done for the

16  purpose of depriving Plaintiff of his reputation, dignity, property, legal rights, and was

17  despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious

18  disregard of his rights, so as to justify an award of exemplary and punitive damages.

19

20  WHEREFORE, Plaintiff prays for judgment as follows:

21  1.  For general, special, and punitive damages according to proof.

22  2.  For costs of suit.

23  3.  For such other and further relief as this court deems just.

24  DATED: July 15, 2005



MICHAEL E. ADAMS
Attorney for Plaintiff
SOREN ANDERSEN

THE FOREGOING INSTRUMENT IS
A CORRECT COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE
ATTEST:  KIRI TORRE

AUG 2 0 2007

CHIEF EXECUTIVE OFFICER/CLERK
SUPERIOR COURT OF CA COUNTY OF SANTA CLARA
IN AND FOR THE COUNTY OF SANTA CLARA
_____ DEPUTY
Jude Trazo

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

First Amended Complaint for Defamation

5

Exhibit B

1

2

3    # FILED

4    AUG 3 1 2005  *uc5*

5    KIRI TORRE
     Chief Executive Officer
     Superior Court of CA, County of Santa Clara

6    By _____ Deputy

7

8        ## SUPERIOR COURT OF CALIFORNIA

9            ## COUNTY OF SANTA CLARA

10   SOREN ANDERSEN,                      Case No.    1–05–CV042734

11                    Plaintiff,          STATEMENT OF DECISION; ORDER

12   v.

13   MAIA YOUNG, et. al.

14                    Defendants.

15

16       The Special Motion to Strike and Demurrer by defendants Maia Young ("Young") and

17   Stanford University ("Stanford") and the Ex Parte Request for Order Shortening Time on Motion

18   to Permit the Conduct of Specified Depositions Pending Determination of Defendants' Anti-

19   SLAPP Motion by plaintiff Soren Andersen came on for hearing before the Honorable William

20   J. Elfving on August 30, 2005 at 9:00 a.m. in Department 2.  The matters having been submitted,

21   the court makes the following determination:

22   I.  Special Motion to Strike

23       The Special Motion to Strike the First Amended Complaint ("FAC") pursuant to CCP §

24   425.16 is GRANTED.

25       Plaintiff's FAC includes causes of action for defamation and defamation per se.  The

26   alleged defamatory statements include: (1) statements by Young to police that she speculated

27   that plaintiff had committed vandalism; (2) statements by Young to Stanford colleagues and

28

administrators of her contention that plaintiff had vandalized her personal property; (3) statements by Stanford administrators who repeated Young's allegations to Stanford campus police and other personnel; and (4) statements by Stanford administrators characterizing plaintiff as a predator who must be reported to the campus police if he violated the ban barring him from being in the same vicinity as Young while on the Stanford campus and from attending yoga classes at the Stanford's Aerobics and Yoga Club or otherwise having any contact with anyone associated with the Club.  (¶¶ 15-17, 18, 25 of FAC).

To determine whether defendant's Motion to Strike should be granted, the court must first determine whether defendants have met their burden of showing that plaintiff's causes of action for defamation in the FAC arise from protected activity.  Defendants have met their burden.  The alleged statements by Young to the police are protected speech because they are statements made before an official proceeding authorized by law.  CCP § 425.15(e)(1); *Wang v. Hartunian* (2003) 111 Cal. App. 4th 744, 749.  The alleged statements by Young to Stanford colleagues and administrators and by Stanford administrators to campus police and other personnel are protected speech because they are statements made in connection with an issue under consideration or review by an official proceeding authorized by law.  CCP § 425.15(e)(2). *See* Declarations of Maia Young, Christine Griffith, Jeffrey Vasquez, Del Bandy, and Bridgette Martin.

Since defendants have met their burden, the burden shifts to plaintiff to establish by clear and convincing evidence that he will prevail on his causes of action for defamation.  CCP § 425.16(b); *Conroy v. Spitzer* (1999) 70 Cal. App. 4th 1446, 1451-54.  Plaintiff has failed to meet his burden.  Plaintiff has provided no evidence to show that he can prevail on his causes of action.

1         A prevailing defendant on a special motion to strike shall be entitled to recover attorney's

2    fees and costs.  C.C.P. § 425.16(c).  The amount of fees and costs awarded must be reasonable.

3    *Roberson v. Rodriguez* (1995) 36 Cal.App.4th 347, 362.  The court was not presented with

4    
5    information to determine a reasonable award of attorney's fees and will reserve determination

6    upon subsequent motion by defendants.

7    II.  Ex Parte Request

8         Plaintiff's Ex Parte Request for Order Shortening Time on Motion to Permit the Conduct

9    
10   of Specified Depositions Pending Determination of Defendants' Anti-SLAPP Motion is

11   DENIED.  Plaintiff has failed to show good cause.  CCP § 425.16(g).

12   III.  Demurrer

13        In light of the court's ruling on the Special Motion to Strike, the Demurrer to the FAC is

14   MOOT.

15   

16   

17   Date:  _8/30/05_    _William J. Elfving_

18                                      William J. Elfving
       Judge of the Superior Court

19   

20   

21   THE FOREGOING INSTRUMENT IS
     A CORRECT COPY OF THE ORIGINAL
     ON FILE IN THIS OFFICE
     ATTEST: KIRI TORRE        

22   AUG 2 2 2007

23   CHIEF EXECUTIVE OFFICER/CLERK
     SUPERIOR COURT OF CA COUNTY OF SANTA CLARA
     IN AND FOR THE COUNTY OF SANTA CLARA
24   BY _____ DEPUTY

25   

26   

27   

28

Exhibit C

**ORIGINAL**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

**FILED**

NOV - 6 2006

MICHAEL J. YERLA, Clerk

By _____

DEPUTY

SOREN ANDERSEN,

    Plaintiff and Appellant,

    v.

MAIA YOUNG, et al.,

    Defendants and Respondents.

H029484, H029742

(Santa Clara County
  Super. Ct. No. CV042734)

Plaintiff and appellant Soren Andersen filed an action against Maia Young and Stanford University in which he alleged that Young and several employees, staff and instructors at Stanford had defamed him and damaged his reputation by making statements that he was harassing Young, that he had vandalized her property, that he was a "predator," and that he must be banned from attending certain yoga classes held on the Stanford campus. Defendants filed a special motion to strike the complaint under Code of Civil Procedure section 425.16[1] as a strategic lawsuit against public participation ("SLAPP"). The trial court granted the motion and dismissed the lawsuit. The court later awarded defendants $79,000 in attorney's fees.

On appeal we first consider the question whether appellant's complaint alleges conduct subject to the protection of section 425.16, the so-called anti-SLAPP statute. Appellant contends that his lawsuit does not come within the statutory definition of

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

protected conduct because the statements complained of by him were not made "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) After careful review of the law in this area, including recent Supreme Court authority, we conclude that appellant's lawsuit falls within the statutory definition of a SLAPP, under section 425.16, subdivision (e)(2).

We next consider whether appellant demonstrated a probability of prevailing on the merits, and we find that he did not. (§ 425.16, subd. (b)(1).) We further find that the court did not abuse its discretion in denying appellant's motion for discovery under section 425.16, subdivision (g), for lack of good cause. Accordingly we affirm the order granting the motion to strike.

In a separate appeal, appellant challenges the court's award of $79,000 in attorney's fees. The statute provides that a defendant prevailing on a motion to strike under section 425.16 is entitled to attorney's fees. (§ 425.16, subd. (c).) However, courts have interpreted this provision to refer only to attorney's fees incurred in connection with the motion, and not to all fees incurred in the entire action. (See, e.g., *S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384.) It appears from respondents' declaration that the $79,000 in fees sought included fees incurred on aspects of the case other than the special motion to strike. We will therefore reverse the attorney's fees order and remand with directions that the court limit the award of attorney's fees to those incurred on the motion under section 425.16.

### FACTS

The communications that form the basis for appellant's complaint for defamation occurred during a period of five days, from May 15, 2004 through May 19, 2004, but events leading up to that time began in the fall of 2003.

Appellant was doing post-graduate research at Stanford University, pursuant to a one-year appointment that ended in October of 2003. He regularly attended yoga classes run by the Stanford Aerobics and Yoga Club (SAY). SAY is a student-run organization

2

that provides instructors, many of whom are graduate students, and schedules classes on the Stanford campus. The classes appellant attended were held at the Rains Hacienda Commons building on the Stanford campus. After his one-year appointment ended, appellant stayed in the area in order to participate in seminars and publish his research. He continued to attend the yoga classes.

In the fall of 2003, Maia Young, who was a PhD candidate at Stanford, began teaching a yoga class at the Yoga Club. Appellant regularly attended the class she taught and also attended several smaller classes held either at Young's home or at the home of a friend of hers. Towards the end of October, appellant suggested he and Young have lunch together. She initially agreed, although she had no interest in a dating relationship. The following week, appellant e-mailed Young reiterating the lunch invitation. She responded, suggesting they meet for lunch on a Monday, November 17. In another e-mail, he then proposed plans to get together on Sunday morning, November 16, and she agreed. At the yoga class on November 12, 2003, appellant presented Young with a written invitation for the Sunday get together. The next day he sent her an e-mail saying he was looking forward to it.

Young believed that the lunch was becoming significant to appellant and that he perceived it as a date. She wrote him an e-mail on Friday November 14, wherein she apologized for the short notice, but explained that she wanted to "be honest" and "really felt uncomfortable about the whole situation." She said she had a boyfriend and felt "weird about going out with other guys," and she was also "a little overwhelmed by the volume of our communication." She said she enjoyed having him in class and sharing yoga, but would prefer to keep it to that. Appellant immediately sent an angry e-mail in response, in over-sized red font, telling Young she was "really messing things up." He wrote: "You are generating bad karma, and don't go around like this!"

Appellant attended a few more of Young's yoga classes until winter break in December. In January of 2004, he sent her a book he had found interesting. She did not respond. In March of 2004, he sent her a self-addressed envelope and a note asking her to send the book back. The following week he sent another note asking for the book.

3

She received this second note the same day she had sent the book back to him. The following day, appellant called Young at home at 8:30 in the morning. She told him she had returned the book. On March 17, 2004, he sent her an e-mail note thanking her for sending the book and saying he hoped they could talk soon. She did not reply. The following week he sent her another e-mail, with some comments about yoga. She did not reply. On April 2, 2004, appellant called Young at home again. He said he really needed to speak to her and wanted to know if she was mad at him. He asked if he could return to yoga class and she said she could not prevent him from attending class.

After receiving this phone call on April 2, 2004, Young e-mailed appellant. She stated: "I have not replied to your attempts to contact me, because I am not comfortable communicating with you. I would like you to stop contacting me. I apologize if this sounds harsh, but I don't want there to be any misunderstanding about this request. Do not contact me again." After receiving this e-mail, appellant immediately began attending Young's yoga class again. She felt uncomfortable around him and tried to keep direct interactions to a minimum, including asking others to stay after class so that she would not be alone when she left. The last yoga class appellant attended was May 12, 2004.

On May 14, 2004, a Friday, Young discovered that her car had been vandalized outside her home. She called the Menlo Park Police Department to report the incident, and Officer Jeffrey Vasquez responded to take the report and investigate the matter. Vasquez stated that in his experience such vandalism was typically not a random prank. He suspected that Young might have been targeted and he asked if she had any negative relationships. She described her contacts with appellant over the prior several months. After hearing this Vasquez was concerned that appellant might have been the possible source of the vandalism and also that his interactions with Young might constitute harassment. He advised Young to bring this issue to the attention of Stanford and the Stanford University Department of Public Safety (the Stanford Police). He also suggested to Young that she allow him to ask appellant not to have any further contact

with her whatsoever. She agreed that Vasquez could tell appellant when he interviewed appellant that she wanted him to stop coming to her yoga class.

On Saturday, May 15, 2004, Vasquez interviewed appellant pursuant to his investigation of appellant's behavior towards Young and his possible involvement in the vandalism. Appellant adamantly denied that he had vandalized Young's car and further denied that he had harassed her. Vasquez told him that Young did not want any further contact from him and suggested that appellant stop attending her yoga classes. Appellant said he did not intend to stop going to the yoga classes. Vasquez then informed Young of this and advised her again to contact Stanford authorities to get assistance with preventing appellant from the attending the SAY classes.

As advised by Officer Vasquez, Young informed her supervisors at the SAY program about the situation with appellant. On Saturday, May 15, Young e-mailed Bridgette Martin and Stephanie Soler, the coordinators of the SAY program. She explained that her car had been vandalized and that the responding officer from the Menlo Park Police Department thought she might have been personally targeted. She said the police were questioning one of the participants in her yoga class at SAY. Young told Martin and Soler that Officer Vasquez had suggested appellant not attend her class, but that he had told Vasquez that he intended to continue coming to class. Later that day, Young was contacted by another officer from the Menlo Park Police Department. This officer told her that appellant had called the police department to complain that Officer Vasquez had contacted him. Appellant had said that he wanted to protect himself from harassment charges but he refused to stop attending the classes. The officer who spoke with Young told her that after speaking with appellant he was concerned for her safety.

On Saturday, May 15, appellant also sent an e-mail to Martin, telling her there was "an issue of outmost urgency" that he needed to speak to her about in person. Martin and Soler were concerned about the communications from Young and appellant, and in an effort to ensure that the matter was handled responsibly, they encouraged Young to contact the Stanford Police regarding appellant and the ongoing Menlo Park Police Department investigation.

On Monday, May 17, Young called the Stanford Police and described the situation. The officer she spoke with said that in order to prevent appellant from attending her class, someone from the Stanford administration would have to prohibit him from attending the classes and put the Stanford Police on notice. Young talked with Martin and Martin referred her to Dean Christine Griffith. Dean Griffith was Director of the Graduate Life Office at Stanford and was responsible for the oversight and management of the facilities used by SAY. Griffith had been handling sexual harassment and other similar matters for the Graduate Life Office for 10 years, and had extensive training in investigating and managing sexual harassment situations. Martin called Griffith and informed her that one of the SAY instructors was concerned about one of her yoga students whose behavior was making her uncomfortable. Griffith looked appellant up and determined that his one-year appointment at Stanford had ended.

On Monday, May 17, appellant arrived at Martin's office "unannounced and uninvited." He insisted on seeing her immediately, but she was not in. He returned later in the afternoon and wanted to speak to Martin alone. He presented himself with an "urgency and intensity" that made her uncomfortable. He told her that he "had been accused of something" and that he wanted to sit down and talk about the situation with her and Young. She explained that she was not qualified to help him with this situation and that there were other people at Stanford who were more qualified to help him. Appellant attended a yoga class later that day with another instructor and after class he raised the issue with that instructor. Because appellant was contacting instructors at the SAY program directly, Martin and Soler decided that they should inform the other instructors at SAY to refer appellant to Stanford administration if he approached any of them. They did this the next day, on May 18, 2004.

On May 18, Young talked with Dean Griffith by telephone. Young recounted the history of contacts with appellant and the events of the past few days, including the report and investigation by the Menlo Park Police. Young explained that the Menlo Park Police had suggested she take the matter up with Stanford authorities. Young asked that Stanford prohibit appellant from attending her classes in the future because his behavior

6

was making her uncomfortable. On the same day that Griffith spoke to Young, appellant also called Griffith's office. Griffith scheduled a meeting with him for Wednesday, May 19, 2004.

Appellant met with Dean Griffith and Assistant Dean Kenneth Hsu on May 19, 2004. Griffith explained to appellant that Young was uncomfortable with his behavior and that they were interested in hearing his side of the story. He asserted that Young had been flirting with him and leading him on, and he insisted that his behavior was not inappropriate. He felt victimized that the Menlo Park Police had interviewed him about the vandalism incident. Griffith told him that she and Hsu were not intending to judge him and were not accusing him of vandalizing Young's car; they only wanted to help defuse an uncomfortable situation. Griffith told him to stay away from Young and from the SAY yoga classes held at the Rains Hacienda Commons facility on campus. He was welcome to attend any other yoga classes anywhere else on campus. He agreed to this.

Shortly after leaving the meeting on May 19, 2004, appellant placed calls to both Griffith and Hsu. He continued to insist that Young had been flirting with him and that his behavior towards her was appropriate. He also wrote an e-mail to Bridgette Martin at SAY in which he informed her "there is nothing [Stanford is] going to do about this" and he further stated that "I have to do what I have to do." Martin and Soler were concerned that this e-mail sounded threatening. Soler forwarded it to Griffith. Soler sought Dean Griffith's advice as to what the SAY instructors should do if appellant violated his agreement and showed up at a SAY class. Griffith told her to call the Stanford Police. Soler relayed this to the other instructors at SAY.

Later on May 19, 2004, appellant returned to the Graduate Life Office and insisted on seeing Dean Griffith again. Ken Hsu joined them. Appellant gave Griffith some notes he had made regarding his interactions with Young, in which he commented on Young's style of yoga instruction and what he perceived to be her flirtations with him. Griffith confronted appellant about the e-mail he had written earlier that day to Martin that could be understood to have a threatening tone. She told him that since he was now

7

aware that he was making Young and others uncomfortable, it had been "extremely inappropriate" for him to send this e-mail.

Hsu later wrote appellant an e-mail dated May 19, 2004, in order to reiterate the concerns that he and Griffith had and to reinforce the prohibition about not contacting Young or attending SAY yoga classes. Hsu reminded appellant that his e-mail to the SAY coordinators after he had agreed with Griffith that he would not attend any more classes "escalated a very difficult situation that we're attempting to resolve for everyone involved." He emphasized to appellant: "you cannot engage in further communication with any instructors or members of the Aerobics/Yoga groups." Hsu said that he understood that appellant and Young had different perceptions of their interactions, and assured appellant that "it is not our intent to make judgments about you or Maia." He did remind appellant, however, that if he went to a class at SAY or contacted any of the SAY instructors again, "the Stanford Police will be notified."

Both Griffith and Young were in touch with the Stanford Police on May 19, 2004. Griffith spoke with Sergeant Del Bandy and explained that she had met with appellant and had banned him from all SAY classes at the Rains Hacienda Commons facility. She also told him about the vandalism incident and the Menlo Park Police investigation that had included appellant. Griffith told Del Bandy about the e-mail appellant had sent to the SAY coordinator, in which he said "I have to do what I have to do." Sergeant Del Bandy took the information and informed Griffith that if appellant were to appear at the Rains Hacienda Commons facility, the Stanford Police would have authority to arrest him for trespassing. When Young called Sergeant Del Bandy, he informed her that Dean Griffith had already called and initiated a report. Young was assured that if appellant attempted to attend a yoga class at the SAY facility, the Stanford Police would respond and remove him for violating Penal Code section 602 (trespass).

Appellant stopped attending the Yoga Club classes.

### PROCEDURAL BACKGROUND

Appellant filed his original complaint against Young and Stanford University on July 13, 2004, in San Mateo County. It alleged that Young had defamed him with her

statements to the police and to Stanford authorities that he had vandalized her property, and that Stanford had defamed him by republishing the assertions that he had vandalized her property, that he was harassing Young, and that he was a "predator." Since neither defendant was resident in San Mateo County, in January of 2005 defendants moved to change venue to Santa Clara County. Counsel for defendants also informed appellant's attorney that defendants intended to file a motion to strike the complaint pursuant to section 425.16, the anti-SLAPP statute.

After the case was transferred to Santa Clara County in June of 2005, appellant filed his first amended complaint, on July 15, 2005, shortly before the anti-SLAPP motion was to be filed. The first amended complaint deleted the specific allegations that Young's statements to the Menlo Park Police Department were defamatory. Defendants amended and then filed their anti-SLAPP motion on July 18, 2005. They also filed a demurrer to the complaint on August 3, 2005.

On August 30, 2005, the court heard defendants' special motion to strike and their demurrer, and also considered an ex parte request filed by appellant for leave to take discovery and for a stay of the proceedings, pursuant to section 425.16, subdivision (g). On August 31, 2005, the court filed its order and statement of decision. The court granted defendants' motion to strike the complaint under section 425.16. The court found that the alleged defamatory statements had been made "in connection with an issue under consideration or review by an official proceeding authorized by law. CCP § 425.16(e)(2)." The court further found that appellant had produced no evidence to show a probability of prevailing on his claims. The court denied appellant's motion for discovery on the ground that "good cause" had not been shown, as required by section 425.16, subdivision (g). Finally, in light of its ruling on the anti-SLAPP motion, the court found that the demurrer was moot.

Defendants filed a motion for attorney's fees on October 14, 2005, under section 425.16, subdivision (c). Appellant filed no opposition. Instead, he filed a notice of appeal (H029484) from the court's order granting the motion to strike, and sought to stay any further proceedings on the attorney's fees motion pending the appeal. He substituted

9

himself in as counsel on November 4, 2005. The court heard the attorney's fees motion on November 10, 2005. There was no appearance by appellant and the court granted the motion. On December 22, 2005, the court entered an order awarding defendants their attorney's fees in the amount of $79,000 and costs in the amount of $776.90. Appellant appealed from this order. (H029742) Briefing has been consolidated for the two appeals and we will consider them together.

## THE MOTION PURSUANT TO CODE OF CIVIL PROCEDURE 425.16

### A. *Legal Framework*

The anti-SLAPP statute, section 425.16, was enacted in 1992 in response to a "disturbing increase" in lawsuits brought for the strategic purpose of chilling a defendant's rights of petition and free speech. (§ 425.16, subd. (a).) SLAPPs are unsubstantiated lawsuits based on claims arising from defendant's constitutionally protected speech or petitioning activity. (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 60 (*Equilon*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) The anti-SLAPP statute provides a means for the trial court to evaluate the merits of a possible SLAPP "using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) Under the procedure authorized in the statute a defendant can stay discovery before litigation costs mount, gain early dismissal of the lawsuit, and recover attorney's fees. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 (*Kibler*).)

Section 425.16 applies to any cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subds. (b)(1), (e).) The stated purpose of section 425.16 is to encourage protected speech by permitting a court to promptly dismiss unmeritorious actions or claims that are brought "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) In order to achieve these ends, a 1997 amendment to the statute added the proviso that the

statute "shall be construed broadly." (§ 425.16, subd. (a), as amended by Stats. 1997, ch. 271, § 1; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1130.)

A defendant seeking the protection of the anti-SLAPP statute must make the initial showing that the lawsuit arises from conduct "in furtherance of [a] person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subds. (b)(1), (e); *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417.) The statute describes four categories of conduct that will qualify: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

When defendant's alleged acts fall under subdivisions (e)(1) or (e)(2) of section 425.16, defendant is not required to make a separate showing that the matter is "an issue of public interest," as is necessary under subdivisions (e)(3) and (e)(4). (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113-1123 (*Briggs*).) This is because the concept of what constitutes a public issue is deemed to include speech activity that takes place before, during, or in connection with an "official proceeding authorized by law." (§ 425.16, subd. (e)(1), (e)(2); *Briggs, supra*, 19 Cal.4th at pp. 1116-1117; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1047.) The category of protected speech at issue here is that described in subdivision (e)(2) of section 425.16. We therefore focus on the question whether the statements complained of by appellant were "made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) Our analysis is guided by the express Legislative intent

that the statute be given a broad interpretation in order to achieve its ends. (§ 425.16, subd. (a); *Kibler, supra,* 39 Cal.4th 192.)

### B. *Standard and Scope of Review*

Application of the anti-SLAPP statute involves a two-part burden-shifting test. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity," within the meaning of the statute. (*Navellier, supra,* 29 Cal.4th at p. 88; § 425.16, subd. (b)(1).) In other words, the court decides whether defendant's acts fall within one of the four categories set forth in subdivision (e) of section 425.16. "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) In making its determination on the motion, the trial court considers the pleadings and the supporting and opposing declarations and affidavits stating the facts upon which liability is based. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907.)

Whether section 425.16 applies to a particular complaint presents a legal question. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.) This court therefore conducts de novo review, and in doing so we apply the same process as the trial court. (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 342.) "Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999; *Equilon, supra,* 29 Cal.4th at p. 67.)

### C. *Are the Allegedly Defamatory Statements Protected Speech Under Section 425.16, Subdivision (e)(2)?*

Appellant's first amended complaint contained the following factual allegations. Young reported an incident of vandalism to the Menlo Park Police Department and she "speculated" appellant had been involved. This led to the police contacting appellant. Young then informed various colleagues and administrators at Stanford of her "contention" that appellant had vandalized her property. Appellant met with Stanford personnel in an attempt to convince them of his innocence. However, Stanford credited

12

Young's "unfounded allegations" and took "punitive action" against him by banning him from contact with Young and attendance at classes at the Yoga Club.  In addition, Stanford personnel repeated Young's allegations and characterized appellant as "a predator" who was harassing Young and others and must be reported to the Stanford Police if he attended class at the Yoga Club.  These allegations were false and those repeating them knew they were false or acted with reckless disregard for their truth or falsity.  In a second cause of action for defamation per se, the appellant alleged that the statements made about him could have been and were construed by others hearing them as constituting "crimes allegedly committed by [appellant], namely vandalism, harassment and stalking."  Appellant alleged respondents' conduct damaged his personal and professional reputation and caused him emotional distress.  He sought general, special and punitive damages.

Appellant concedes that Young's communications with the Menlo Park Police Department during the investigation of the vandalism incident are protected under section 425.16, subdivision (e)(1) as statements made in the course of a police report and investigation concerning possible criminal activity.  (*Wang v. Hartunian* (2003) 111 Cal.App.4th 744, 749; *Hunsucker v. Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1503.)  In amending his initial complaint appellant deleted specific allegations that Young's statements to police were defamatory.  Appellant argues, however, that the other communications described in his first amended complaint are not similarly protected because they are not statements made in the course of any police proceeding, or in connection with an issue under review by any "official proceeding authorized by law." (§ 425.16, subd. (e)(2).)  He contends that after the Menlo Park Police interviewed him, he was no longer being considered as a suspect in the vandalism incident.  Therefore the communications by and between Stanford personnel and Young were not "in connection with" the police proceeding but rather constituted Stanford's own investigation into Young's claim that appellant was harassing her.  Since Stanford is a private university, similar to any other private employer, he argues that these communications were not protected by the anti-SLAPP statute as part of an "official proceeding authorized by law."

13

(§ 425.16, subd. (e)(2); *Olaes v. Nationwide Mutual Insurance Company* (2006) 135 Cal.App.4th 1501, 1509 (*Olaes*) [private company's investigation of harassment claim does not qualify as an "official proceeding authorized by law" under the anti-SLAPP statute].)

We disagree with appellant's characterization of the communications in this case. All of the communications complained of took place during several days following the initial report to the police and commencement of the police investigation on May 14, 2004. Nothing in the record indicates that the Menlo Park Police Department had closed its investigation of the vandalism incident during that time. Officer Vasquez specifically advised Young to seek assistance from Stanford authorities. He also asked her to let him know if appellant had "a reaction" to being interviewed by the police. This indicates that in Officer Vasquez's opinion, the police matter was still open. Young's contacts with the Stanford Police, Dean Griffith and the Yoga Club supervisors were in response to Officer Vasquez's suggestion and thus were directly related to the police investigation. The statements and communications complained of were all reasonably connected to, and flowed from, the initial report and investigation by the Menlo Park Police Department, which was still a matter "under consideration or review" by an official body, within the meaning of section 425.16, subdivision (e)(2).

Appellant contends that the statements made did not contribute to or further the police investigation in any way. However, it is not necessary that the statements and the issue under review actually lead to a criminal charge so long as there is a reasonable connection to a "potential violation of law." (*Dickens v. Provident Life & Accident Ins. Co.* (2004) 117 Cal.App.4th 705, 714.). It is apparent from the record here that the vandalism investigation was the precipitating event for the various statements made and actions taken by Stanford authorities through March 19, 2004, when appellant was eventually banned from further attendance at the SAY classes. Furthermore, as Sergeant Del Bandy explained in his sworn declaration, if appellant violated the ban, the Stanford Police could act to arrest him for trespassing. Thus the efforts of Stanford authorities to

14

put the ban in place could lead to appellant's arrest for trespassing and were thus reasonably connected to a "potential violation of law." *(Ibid.)*

Courts have found that the protection of section 425.16 extends to statements made between private parties, so long as the statements are "rationally connected" to the issue under consideration or review in an official proceeding. *(Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 *(Dove).)* In *Dove* the challenged statements were made in letters by an attorney to various celebrities implying that Dove Audio, Inc. had not paid royalties where due to celebrities who had participated in making a record. The court found that although the statements were not communications to or from government officials, the letters were written "in preparation for the sending of a complaint to the Attorney General." *(Dove, supra,* 47 Cal.App.4th at p. 783.) They were thus protected under section 425.16 because there was a connection to an "official proceeding." In another case, *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170 *(Averill),* a citizen who opposed a development plan in her neighborhood spoke to her employer and attempted to convince her employer not to make any further charitable contributions to the corporation that was developing the property. The court in *Averill* found that even though the statements complained of were between private parties, they arose in the context of an ongoing public issue that was under review at the time by the local governmental bodies. Thus the citizen's comments to her employer were protected under section 425.16, subdivision (e)(2) because they were made "in connection with an issue under consideration or review . . . [in an] official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

Appellant insists that the statements made between Young and the various Stanford officials were completely separate from the Menlo Park Police investigation and constituted Stanford's own response to a harassment claim of one of its students. He thus relies on *Olaes, supra,* 135 Cal.App.4th 1501, a case that was decided after the trial court ruled on this matter. In *Olaes,* a former employee sued his employer for defamation because of statements made during the employer's investigation of a sexual harassment claim. The employee contended he was falsely accused and that the employer failed to

15

adequately investigate prior to taking action against him. The Court of Appeal in *Olaes* found that an investigation of harassment charges by a private employer was not an "official proceeding" within the meaning of section 425.16. Therefore, the statements made in the course of that investigation were not protected by the anti-SLAPP statute. (*Id.* at pp. 1508-1509.)

In its recent opinion in *Kibler, supra,* 39 Cal.4th 192, the Supreme Court adopted a broader view of what can constitute an "official proceeding." The high court found that a private hospital's peer review procedure qualified as an "official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(2). (*Kibler, supra,* 39 Cal.4th 192.) The court in *Kibler* found that this result was consistent with the Legislative intent to construe section 425.16 broadly in order to provide the maximum possible protection. The Court of Appeal in *Olaes* had narrowly interpreted section 425.16, subdivision (e)(2), finding its protection was limited to communications made in connection with a proceeding "in a governmental forum." (*Olaes, supra,* 135 Cal.App.4th at p. 1507.) However, in *Kibler* the Supreme Court stated that "nothing in the legislative history . . . [supports the] contention here that the Legislature's 1992 enactment of the anti-SLAPP statute intended the phrase 'other official proceeding authorized by law' in subdivision (e)(2) of section 425.16 to be limited to proceedings before governmental entities." (*Kibler, supra,* 39 Cal.4th at p. 203, fn. omitted.)

Furthermore, *Olaes* is factually distinguishable from our case. The investigation of the harassment charge in *Olaes* was not connected in any way to an official police investigation. In our case, the Menlo Park Police interviewed appellant on May 15, 2004, not only "as a possible source of the vandalism," but also because of Officer Vasquez's concern that appellant's contacts with Young "may constitute harassment." Following this interview, Young was told by two different Menlo Park Police officers that appellant had refused to stop attending her classes when asked to do so. They encouraged Young to contact Stanford authorities to inform them of the situation and to try to ensure her safety. Officer Vasquez asked her to contact him if appellant had a reaction to being interviewed by police. Young's subsequent communications over the next few days with

16

the SAY supervisors and with Dean Griffith and Sergeant Del Bandy were in response to
the advice by the Menlo Park Police Department during a police investigation. The
police report and investigation played a key part in the communications between Young,
Griffith, Martin, and the Stanford Police, as well as in the communications between
appellant, the SAY coordinators, Dean Griffith and Assistant Dean Hsu. Thus, unlike
*Olaes,* there was a connection in our case between the statements made and an issue
under consideration in an official proceeding, namely the Menlo Park Police Department
investigation.

In sum, defendants met their initial burden under section 425.16 to demonstrate
that appellant's action arose from their exercise of protected rights of petition or free
speech. The action was therefore subject to dismissal as a SLAPP unless appellant could
demonstrate "a probability of prevailing on the claim." (*City of Cotati v. Cashman,
supra,* 29 Cal.4th at p. 76.)

### D. *Probability of Prevailing on the Merits*

In order to meet the second part of the test in a motion to strike under section
425.16, " 'the plaintiff "must demonstrate that the complaint is both legally sufficient and
supported by a sufficient prima facie showing of facts to sustain a favorable judgment if
the evidence submitted by the plaintiff is credited." ' " (*Navellier, supra,* 29 Cal.4th at
pp. 88-89.) In evaluating whether a plaintiff has demonstrated a probability of prevailing,
the court considers the pleadings and the supporting and opposing declarations and
affidavits stating the facts upon which liability is based. (*Zamos v. Stroud* (2004)
32 Cal.4th 958, 965.) Plaintiff may not rely solely on allegations in the complaint, even
if verified; rather, the plaintiff's showing must be made by competent evidence that
would be admissible at trial. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at
p. 1010.) "[T]hough the court does not *weigh* the credibility or comparative probative
strength of competing evidence, it should grant the motion if, as a matter of law, the
defendant's evidence supporting the motion defeats the plaintiff's attempt to establish
evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002)
28 Cal.4th 811, 821.)

Here the trial court properly held that appellant did not show a probability of prevailing on the merits, for two independent reasons. First, the first amended complaint was not " ' "supported by a sufficient prima facie showing of facts to sustain a favorable judgment." ' " (*Navellier, supra,* 29 Cal.4th at p. 89.) Second, the defamation causes of action were legally insufficient because the communications complained of were privileged under Civil Code section 47, and were therefore not actionable.

The only causes of action in the first amended complaint were for defamation and defamation per se. Therefore, in order to demonstrate a probability of prevailing, appellant was required to show facts that, if proven, would support all of the elements of a cause of action for defamation: namely, that written or oral communications were made, that they were false, that they were not protected by any privilege and that they resulted in an injury to reputation. (Civ. Code, §§ 44, 45; *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242.) In general, in order to be defamatory, an oral or written communication "must contain a false statement of *fact.*" (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600, italics in original.) A statement of opinion "cannot be false and is outside the meaning of libel." (*Tschirky v. Superior Court* (1981) 124 Cal.App.3d 534, 539.)[2]

Appellant's first amended complaint alleged that Young "informed various colleagues and administrators employed by STANFORD of her contention that Plaintiff had . . . vandalized her personal property." Young "knew the allegation to be false, or acted with reckless disregard for the truth or falsity thereof." It further alleged that "STANFORD administrators repeated YOUNG's allegations to STANFORD campus police and other personnel, and characterized Plaintiff as a predator. . . ." "STANFORD personnel republished YOUNG's allegation that Plaintiff had vandalized her property, and furthermore published additional allegations that Plaintiff was a predator who had harassed YOUNG and others." The defamation per se cause of action was based on

---

[2] A statement phrased as an "opinion" may nonetheless imply false and defamatory facts. (*Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 21), and it may be actionable depending on its context. (See, *Carver v. Bonds, supra,* 135 Cal.App.4th at p. 346.)

18

allegations that the statements made could have been construed by others hearing them as accusing appellant of various crimes.

These allegations lack factual support in the declarations. The declarations do not show that Young contended, or even believed, that appellant had vandalized her property, or that she told anyone else that appellant had vandalized her property. Officer Vasquez stated in his sworn declaration that he suspected Young had been targeted and he asked her if she had experienced any "negative relationships." When she described her contacts with appellant over the prior several months, Vasquez suspected that appellant might have been involved in the vandalism, but Young was not convinced. In an e-mail message to Vasquez the next day, Young stated: "In my opinion, it probably wasn't [appellant], but I really don't know him at all." She explained to Vasquez that she "would like [appellant] to stop coming to my yoga class. If there is any way for you to convey this to him, I would be very grateful." But when Officer Vasquez told appellant that Young did not want any further contact with him and suggested that appellant stop attending her yoga classes, appellant refused.

These communications between Young, Officer Vasquez and appellant in the course of a police investigation are of course absolutely privileged. (Civ. Code, § 47, subd. (b); *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 358.) As to the ensuing e-mails and conversations with Martin and Soler, Dean Griffith and Sergeant Del Bandy, there is nothing in the record indicating that Young had changed her expressed opinion that "it probably wasn't [appellant]" who vandalized her property. The declarations show that the ongoing Menlo Park Police investigation was a subject of these communications. But the fact that there was a police investigation, and that appellant had been interviewed by police in the course of it, were not false statements. In her communications with her supervisors at SAY, Young explained "that her car had been vandalized," that the Menlo Park Police thought that she could have been personally "targeted," that the police had interviewed appellant in connection with the incident, that they had suggested to him "that he not attend Young's classes in the future," and that he

had refused to do so. All of these statements were true and thus cannot support an action for defamation.

The declaration of Dean Griffith further demonstrates that what was said about appellant was not actionable. Griffith explained to appellant that she and Hsu were not judging his behavior. She "told him very clearly that we were not accusing him of vandalizing Young's car." She further explained to him that "regardless of whether his contacts with Young were appropriate, the result was that Young was made to feel uncomfortable by appellant's contacts and continued presence in her class." Dean Griffith stated that appellant did not deny any of the factual history of the contacts between him and Young and, although he felt "victimized" by the police contact, he could not deny that he had been interviewed in the course of the vandalism investigation. The record further does not show that either Young or the various Stanford employees ever alleged that appellant was a "predator" or referred to him as such, as appellant contends. In Sergeant Del Bandy's sworn statement, he stated that neither Griffith nor Young ever "accused [appellant] of being a vandal, criminal or predator."

Furthermore, many of the statements complained of by appellant are statements of opinion rather than fact. These include: Young's statements that appellant's attentions made her feel uncomfortable; Griffith's statement that she found appellant's comments about Young "disturbing"; Martin's statement that appellant's e-mail to her could be understood as a threat; and Hsu's statement that appellant's e-mail had "escalated a very difficult situation that we're attempting to resolve." These were "subjective comment[s]" or opinions of the speakers and thus were not actionable. (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 837.)

Appellant's own declaration expresses his point of view but does not provide factual support for his allegations. He stated that his purpose in attending Young's class in April and May of 2004, even after receiving her e-mail telling him she did not want any further contact with him, was "purely to improve [his] yoga practice." He stated that in his opinion he did nothing in the classes to make her uncomfortable. After Officer Vasquez informed him that his continued attendance at Young's class was making her

uncomfortable, he told Vasquez that he was being "respectful" and "wished to continue attending." He stated that he told Dean Griffith that "I have been falsely accused of vandalism and stalking YOUNG," but he cites to no statement by Young or anyone at Stanford accusing him of vandalizing Young's property or being a predator. Aside from his own declaration, appellant submitted no other evidence that would tend to establish facts supporting his allegations of defamation.

In addition to the lack of a prima facie showing of facts to support the allegations, appellant's first amended complaint is legally insufficient because, as we have discussed in the previous section, the statements and communications complained of were reasonably related to an ongoing police investigation. They were therefore protected by the "official-proceeding privilege" in Civil Code section 47, subdivision (b). Similar to section 425.16, subdivision (e), Civil Code section 47, subdivision (b) describes constitutionally protected speech and provides immunity from tort liability for communications made in any legislative or judicial proceeding, or "in any other official proceeding authorized by law." (Civ. Code, § 47, subd. (b).) This provision has been interpreted to provide protection to "communications with 'some relation'" to an official proceeding. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193; *Kashian v. Harriman, supra,* 98 Cal.App.4th at p. 908.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Id.* at pp. 912-913.)

Furthermore, Civil Code section 47, subdivision (c), the so-called "common interest privilege," protects "communications made in good faith on a subject in which the speaker and hearer share an interest or duty." (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 727; *Deaile v. General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 846-847.)[3] The declarations here show that the communications complained of here were directed to the few Stanford employees and staff necessary to prevent further attendance by appellant at specific yoga classes. Stanford personnel, including Griffith, Hsu, Martin, Soler and Del Bandy, all shared a professional interest in

---

[3] Civil Code section 47, subdivision (c) provides that a statement is privileged if made "without malice, to a person interested therein . . . by one who is also interested, . . ."

the safe and orderly conduct of the SAY classes.  The statements made were all pursuant to a good faith effort to respond to a developing conflict between an instructor and a student that had escalated due to an ongoing police investigation.  There were no communications other than those necessary to ensure the safety of Young and to prevent the disruption of classes.  In addition to the absolute immunity for protected speech having a connection to an official proceeding, within the meaning of Civil Code section 47, subdivision (b), we believe the qualified "common interest" privilege contained in subdivision (c) of section 47 applies as well.

In sum, appellant failed to make a showing of a probability of prevailing on his first amended complaint for defamation.

## APPELLANT'S MOTION FOR DISCOVERY

The filing of a motion to dismiss under section 425.16 stays all discovery proceedings in the action.  (§ 425.16, subd. (g).)  However, the court "on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." (*Ibid.*)  Good cause includes an element of diligence on the part of the party seeking the discovery. (*Regan v. Lanet* (1987) 197 Cal.App.3d 353.)  "[T]he statute requires *both* a timely motion and a showing of good cause.  Absent either, the request must fail." (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248.)  In order to establish good cause, a plaintiff must show that a defendant or a particular witness possesses evidence needed by plaintiff to establish a prima facie case, and must offer an explanation of what additional facts plaintiff expects to discover. (*1-800 Contacts, Inc. v. Sternberg* (2003) 107 Cal.App.4th 568, 593.)  Plaintiff may not obtain discovery under section 425.16, subdivision (g) merely to "test" defendants' declarations. (*Ibid.*)  The standard of review for a discovery request brought under section 425.16, subdivision (g), is abuse of discretion. (*Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 617.)  The test for abuse of discretion is " 'whether the trial court exceeded the bounds of reason.' " (*Dove Audio v. Rosenfeld, supra,* 47 Cal.App.4th at p. 785.)

22

Here, appellant waited until a week before the special motion to strike was to be heard to file his request for discovery. He asked to postpone the hearing on the motion for 90 to 120 days to take six depositions of those involved in the case in order "to probe into what they in fact said." Appellant's reason for the requested discovery was that it "appears likely that the conduct of depositions will result in Plaintiff being able to present this court with legally sufficient evidence that Defendant Young and other Stanford personnel made defamatory statements concerning him with a reckless disregard for the truth thereof, and hence maliciously—in excess of their evident qualified privilege for communications between interested parties." On August 30, 2005, the court denied appellant's request for further discovery, finding that he had failed to show "good cause" under section 425.16, subdivision (g).

We find no abuse of discretion. The discovery sought by appellant a week before the motion was to be heard was not narrowly tailored, as the statute requires. Appellant did not specify what facts he expected to discover from the witnesses or how those facts would establish a prima facie case. Instead he sought depositions of all of the witnesses in order "to probe into what they in fact said." This is not the type of "specified discovery" that was contemplated by section 425.16, subdivision (g). The declarations submitted by defendants were explicit about what was said and for what purpose. Consistent with the advisements of Officer Vasquez, Young and the Stanford authorities communicated for the limited purposes of banning appellant from attending further yoga classes at SAY and setting up a means for the Stanford Police to enforce such a ban. As both Griffith and Hsu explained to appellant, no one was accusing him of vandalizing Young's car, or of "doing anything wrong or of being a bad person in any way." The obvious purpose of the limited communications and the ban on further attendance by appellant at the SAY classes was to diffuse an uncomfortable situation and prevent disruption of the classes.

Despite the apparent good faith of the communications, appellant argues that he was entitled to probe into the question whether there was malice behind any of the statements, sufficient to defeat the qualified "common interest" privilege provided in

Civil Code, section 47, subdivision (c). Even if he could have shown malice, however, this would not have established a probability of prevailing on his defamation claims. As we have concluded herein, the challenged speech, even assuming it contained some defamatory content, was protected by the "official proceeding" privilege contained in Civil Code, section 47, subdivision (b). This is an absolute privilege and does not require a showing of malice. Thus the discovery requested by appellant to determine whether those involved here spoke with malice could not have yielded " 'evidence needed by plaintiff to establish a prima facie case.' " (*1-800 Contacts, Inc. v. Sternberg, supra,* 107 Cal.App.4th at p. 593; see also *Blanchard v. DIRECTTV, Inc.* (2004) 123 Cal.App.4th 903, 922.)

In sum, the court did not " 'exceed[] the bounds of reason' " in denying appellant's request to postpone the hearing on the motion for the purpose of conducting discovery. (*Dove Audio v. Rosenfeld, supra,* 47 Cal.App.4th at p. 785.) We find no abuse of discretion.

## ATTORNEY'S FEES—APPEAL NO. H029742

Appellant first argues that the court did not have jurisdiction to hear the attorney's fee motion because his appeal of the order granting the special motion to strike was pending. The trial court retains some powers over collateral aspects of the case pending appeal, when such proceedings would not render the appeal futile or ineffective. (*Wisely v. Superior Court* (1985) 175 Cal.App.3d 267, 269; *Whittier Redevelopment Agency v. Oceanic Arts* (1995) 33 Cal.App.4th 1052, 1059-1060.) An award of attorney's fees as costs is a collateral matter not affected by the judgment. (*Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 369.) Therefore the trial court had jurisdiction to award attorney's fees.

Section 425.16, subdivision (c), provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Although, as respondents point out, the amount of a reasonable attorney's fee is generally a matter of the court's discretion (*Dove Audio v. Rosenfeld, supra,* 47 Cal.App.4th at p. 785), the entitlement to attorney's fees under a particular statute is a legal question,

subject to de novo review. (*Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 431.) Recent Supreme Court authority has clarified that, consistent with the legislative history of section 425.16, "the fee 'provision applies only to the motion to strike, and not to the entire action.'" (*S.B. Beach Properties v. Berti, supra,* 39 Cal.4th 374, citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1264 (1991-1992 Reg. Sess.); see also *Lafayette Morehouse, Inc. v. Chronicle Publishing Co., supra,* 39 Cal.App.4th at p. 1384.).

It appears from defendants' declaration supporting their motion for attorney's fees, that the $79,000 in fees requested included fees for work that was not directly related to the motion to strike, such as the motion to change venue, the demurrer and various case management issues. Under the authorities cited above, the fee award should have been limited to the approximate amount that was attributable to the anti-SLAPP motion itself. On remand the court is to make an award of fees consistent with this holding.

## DISPOSITION

The order granting defendants' motion to dismiss under section 425.16 is affirmed. (H029484) The order granting attorney's fees under section 425.16, subdivision (c) is reversed and the matter is remanded so that the court may make an award of attorney's fees limited to those incurred on the motion to strike. (H029742)

Respondents are to have costs on appeal in appeal No. H029484. Appellant is to have costs on appeal in appeal No. H029742.

I, MICHAEL J. YERLY, CLERK OF THE COURT OF APPEAL, STATE OF CALIFORNIA, SIXTH APPELLATE DISTRICT, DO HEREBY CERTIFY THAT THE PRE-CEDING AND ANNEXED IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE.

WITNESS MY HAND AND THE SEAL OF COURT.

THIS 20th DAY OF August 2007

MICHAEL J. YERLY, _____ CLERK

BY _____ DEPUTY

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:



_____

MIHARA, J.




_____

MCADAMS, J.




*Anderson v. Young*
H029484 & H029742

Exhibit D

Court of Appeal, Sixth Appellate District - No. H029484
**S148839**

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

SOREN ANDERSEN, Plaintiff and Appellant,

v.

MAIA YOUNG, et al., Defendants and Respondents.

Petition for review DENIED.

Moreno, J., was absent and did not participate.

SUPREME COURT
FILED

JAN 1 7 2007

Frederick K. Ohlrich Clerk

_____
Deputy

I, MICHAEL J. YERLY, CLERK OF THE COURT OF
APPEAL, STATE OF CALIFORNIA, SIXTH APPELLATE
DISTRICT, DO HEREBY CERTIFY THAT THE PRE-
CEDING AND ANNEXED IS A TRUE AND CORRECT
COPY OF THE ORIGINAL ON FILE IN MY OFFICE.
  a copy
WITNESS MY HAND AND THE SEAL OF COURT.

THIS 20th DAY OF August     20 07
          MICHAEL J. YERLY,          CLERK
BY _____ DEPUTY

GEORGE
Chief Justice

Exhibit E

1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   SARAH G. FLANAGAN #70845
2  JACOB R. SORENSEN #209134
   JASON A. CATZ #224205
3  50 Fremont Street
   Post Office Box 7880
4  San Francisco, CA  94120-7880
   Telephone: (415) 983-1000
5  Facsimile: (415) 983-1200

6  Attorneys for Defendants
   STANFORD UNIVERSITY and MAIA YOUNG
7

FILED

JUN 22 2007

TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY _____ J. Zenzen

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF SANTA CLARA

10            CIVIL DIVISION, SAN JOSE FACILITY

11

12

13  SOREN ANDERSEN,                    )   No. 1-05-CV-042734
                                       )
14              Plaintiff,             )   [PROPOSED] ORDER GRANTING
                                       )   MOTION FOR ATTORNEYS' FEES
15      vs.                            )   PURSUANT TO CCP 425.16 ON
                                       )   REMAND
16  MAIA YOUNG, an individual; STANFORD )
    UNIVERSITY, a business entity form )
17  unknown; and DOES 1-100 inclusive, )
                                       )
18              Defendant.             )
                                       )

19

20      The Motion for Attorneys' Fees Pursuant to Code of Civil Procedure Section 425.16

21  on Remand by Defendants STANFORD UNIVERSITY and MAIA YOUNG

22  ("Defendants") came on for hearing before the Honorable William J. Elfving on June 22,

23  2007 at 9:00 a.m. in Department 2.  This matter was remanded by the Sixth Appellate

24  District Court of Appeal for recalculation of the award of attorneys' fees and costs to

25  eliminate fees and costs that were not attributable to the Anti-SLAPP motion.  The matter

26  having been submitted, the Court orders as follows:

27

28

700718603v.1                        - 1 -                    Case No. 1-05-CV-042734

[PROPOSED] ORDER GRANTING MOT. FOR ATTORNEYS' FEES PURSUANT TO CCP 425.16 ON REMAND

1    The Motion for Attorneys' Fees Pursuant to Code of Civil Procedure Section 425.16

2   On Remand is GRANTED. Defendants are entitled to attorneys' fees and costs attributable

3   to the Anti-SLAPP motion in such an amount as the Court determines to be reasonable.

4   *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 362. The Court finds that the fees and

5   costs requested on remand are limited to Defendants' activities in bringing their Anti-

6   SLAPP motion, that those activities were reasonably undertaken by Defendants, and that

7   the requested fees and costs for those activities are reasonable.

8    IT IS THEREFORE ORDERED that Plaintiff shall pay Defendants attorneys' fees

9   in the amount of $58,000 and costs in the amount of $36.30.

10   Dated: 6/22, 2007.

11

12   Hon. William J. Elfving
     Judge of the Superior Court

13                                                        **William J. Elfving**

14

15

16   THE FOREGOING INSTRUMENT IS
     A CORRECT COPY OF THE ORIGINAL
     ON FILE IN THIS OFFICE
     ATTEST: KIRI TORRE

17

     AUG 2 2 2007

18

     CHIEF EXECUTIVE OFFICER/CLERK
19   SUPERIOR COURT OF CA COUNTY OF SANTA CLARA
     IN AND FOR THE COUNTY OF SANTA CLARA
     BY_____ DEPUTY

20

21

22

23

24

25

26

27

28

700718603v1                          - 2 -